RICHARD MARTIN HELM, Plaintiff, v. ELIZABETH R. KRAPF, Defendant.

(*April* 27, 1951.)

HERRMANN, J., sitting.

*George T. Coulson* (of Morris, Steel, Nichols and Arsht) for the Plaintiff.

*Harold N. Green* for the Defendant.

Superior Court for New Castle County, No. 856, C. A. 1950.

HERRMANN, J.:

This is an action for liquidated damages for rent overcharges brought under the provisions of the Housing and Rent Act of 1947, as amended, [1] 63 *Stat.* 27, 50 *U. S. C. A. Appendix,* § 1895.

On or about September 1, 1949, the defendant rented to the plaintiff an apartment located on the second floor of the house in which the defendant resided in Newark, Delaware. The maximum legal rental for the apartment, under the Federal Rent Control law and the Regulations promulgated thereunder, was $40 per month. During the period September 1, 1949 to May 30, 1950, the plaintiff paid to the defendant the sum of $65 per month.

---

[1]Hereinafter referred to as the "Federal Rent Control Law".

The plaintiff contends that the payment of $65 per month constituted rent for the housing accommodations, including certain privileges, services and facilities connected with the use or occupancy thereof. The defendant contends that only $40 of the monthly payment of $65 was for rent for the apartment; that the balance of $25 per month represented compensation for privileges, services and facilities which were furnished by the defendant to the plaintiff but which were not "connected with the use or occupancy of the housing accommodations", within the meaning of those terms as used in the Federal Rent Control Law and pertinent Regulations.

The privileges, services and facilities here involved, and the defendant's assessment of charges, were as follows:

1. The use of a storage room on the third floor of the house, access to which required passage through the apartment rented by the plaintiff. For this the defendant contends she charged $5 per month.

2. The use of the defendant's telephone located in the portion of the premises occupied by the defendant. For this the defendant says the plaintiff was charged $2 per month.

3. The use of a chicken house and a portion of the garden or yard for the housing of the plaintiff's dogs. For this the defendant avers the charge was $5 per month.

4. Additional electricity for the plaintiff's refrigerator and for the storage room. For this the defendant asserts the plaintiff paid $8 per month.

5. Gas for heating. For this the defendant states that $5 per month was charged.

The Registration Statement filed in the local Area Rent Office for the rental unit here involved indicated that heat, electricity and a garage were included as services and facilities connected with the use of the apartment. It appears that, in addition to the aforementioned charges, the plaintiff was obliged to pay a

monthly charge of $3.50 during the period in which he utilized the garage.

The questions for determination here are: (1) whether the charges made by the defendant constituted attempted evasion and a violation of the Federal Rent Control Law and the Regulations issued pursuant thereto; and (2) if so, whether the violation was wilful or the result of failure to take practicable precautions against the occurrence of the violation, requiring the imposition of triple damages.

The defendant urges that the privileges, services and facilities here involved were not subject to the rent control laws and regulations because (1) they were furnished and paid for under a separate agreement, and (2) they could have been furnished by the defendant and used by the plaintiff even though the plaintiff ceased to occupy the apartment. The defendant concludes that, for these reasons, the privileges, services and facilities were not "connected with the use or occupancy" of the apartment and the compensation therefor was not "rent" within the control of the statute and regulations.

Section 202(e) of the Federal Rent Control Law, 50 *U. S. C. A. Appendix*, § 1892, provides: "The term 'rent' means the consideration * * * demanded or received for or in connection with the use or occupancy of housing accommodations * * *."

Section 202(b) of the Federal Rent Control Law, 50 *U. S. C. A. Appendix*, § 1892, provides: "The term 'housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes * * * together with all privileges, services, * * * and facilities connected with the use or occupancy of such property."

The defendant's position is untenable. The underlying principles of rent control would be fatally violated if a landlord were permitted to escape the governing effects of the statutes

and regulations by the arbitrary imposition of a schedule of "extras" without the authorization of the rent control authorities. *Gilbert v. Thierry, U. S. D. C. Mass.* 1944, 58 *F. Supp.* 235. It is true that certain services, privileges and facilities enjoyed by a tenant may, under certain facts and circumstances, be separate and distinct from the housing accommodation, and, therefore, not subject to control. The particular services and privileges involved in the instant case, however, may not be disassociated from the rental unit by the unrealistic rule of separation urged by the defendant.

As to the defendant's first contention, the evidence adduced in this case demonstrates conclusively that the parties contracted simultaneously for the apartment and the services, facilities and privileges. It is clear that there was one agreement only, and that that agreement included both the housing accommodation and the services and privileges to be furnished. Accordingly, the defendant's conception of separate agreements, or a division of the transaction into two separate parts, cannot be accepted.

The test proposed by the defendant's second contention is this: Could the tenant continue to utilize the services and privileges even though the landlord-tenant relationship with respect to the housing accommodation be terminated? The defendant relies upon *Woods v. Golt, U. S. D. C. Del.* 1949, 85 *F. Supp.* 667, 671, as authority for this test. The question in the cited case was whether certain garage space separately rented to a tenant was a privilege or facility connected with the use or occupancy of the apartment rented by the tenant. In that case, the garage was rented by a separate transaction between the parties which took place approximately two years after the renting of the apartment. While in the cited case the Court looked upon the possibility of separate usage as a factor to be considered, the Court stated the real test to be as follows:

"The test of whether a garage service is a facility or a privilege connected with the use or occupancy of housing accommoda-

tions is the general understanding of the landlord and tenant, and not the contractual liability of the landlord to furnish such service. *Woods v. Forest Hills South*, (2 *Cir.*, 1949) 172 *F*. 2d 147, 148.

"If the landlord and tenant have an understanding that the garage rental is not in connection with the use or occupancy of the tenant's apartment and is truly separate and distinct from such use or occupancy, then the garage service is not a facility or privilege connected with the use or occupancy of housing accommodations and is not subject to the regulations affecting the rental of housing accommodations."

The cited case does not support the defendant's contention regarding the test to be adopted. That case is clearly distinguishable by reason of the time which elapsed after the rental of the housing accommodations, and because of the type of service or facility involved. The very nature of the services, privileges and facilities in the instant case, absent any unusual fact or circumstance, compels the conclusion that they were "connected with the use or occupancy" of the apartment.

Having so concluded, it follows that the defendant violated the Federal Rent Control Act and the Regulations issued pursuant thereto. The remaining question is whether the plaintiff is entitled to recover as damages the amount of rent overcharge or three times that amount.

Section 205 of the Federal Rent Control Act, 50 *U. S. C. A. Appendix*, § 1895, provides: "§ 205. Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment (or shall be liable to the United States as hereinafter provided), for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceed the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case

may be the greater amount: Provided, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. * * *"

By the terms of the Statute, the defendant has the burden of proving that her violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. It appears that the defendant owned other real property. Her experience with rent control during the seven years prior to the violation should have brought to her the realization that she was obliged to consult the Office of the Housing Expediter before any charge was imposed upon the plaintiff in excess of the legal maximum rent. The defendant made no application for an increase of maximum rental, nor did she amend the Registration Statement, nor did she consult the rent control authorities in any way. I conclude that the defendant has not sustained the burden of proving that her violation was not the result of failure to take practicable precautions against the occurrence of the violation.

In such case, the Court has no discretion as to the amount of damages. Treble damages are mandatory under the Statute. See "History of Rent Control Laws with Respect to Damages Allowable Thereunder" by The Honorable Richard S. Rodney, 9 *F. R. D.* 501.

This action was brought on October 27, 1950. The recovery of the plaintiff is limited by the Statute to rent overcharges paid within one year prior to the commencement of the action. The overcharges demanded and received by the defendant during that period amounted to $175. Three times that amount is $525.

Judgment will be entered in favor of the plaintiff against the defendant for $525, and costs.